NITTO BOSEKI CO., LTD., Plaintiff,

v.

OWENS–CORNING FIBERGLAS CORP., Defendant.

Civ. A. No. 83–870–JLL.

United States District Court, D. Delaware.

Nov. 6, 1984.

Roderick R. McKelvie of Ashby, McKelvie & Geddes, Wilmington, Del., Barry E. Bretschneider and Charles A. Wendel of Wegner & Bretschneider, Washington, D.C., of counsel, for plaintiff.

Douglas E. Whitney of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Hiram P. Settle of Hiram P. Settle, P.C., Washington, D.C., and Paul N. Kokulis of Cush-

man, Darby & Cushman, Washington, D.C., of counsel, for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

This suit was brought pursuant to 35 U.S.C. § 146 [1] for review of a decision of the Board of Patent Interferences ("Board"). Briefly stated,[2] the contest is over priority of invention of a method and apparatus for making glass fibers. The plaintiff, owner of a patent [3] for the method and apparatus, and the defendant, the owner of a competing patent application,[4] were both dissatisfied with the Board's decision which split the award of priority on the three counts in interference. The plaintiff timely filed this action, seeking reversal of that part of the Board's decision which awarded priority to defendant on Count 1 (Docket Item ["D.I."] 1), to which the defendant responded with an answer seeking affirmance of that award and a counterclaim for, *inter alia*, a reversal of that part of the Board's decision which awarded priority on Counts 2 and 3 to the plaintiff. (D.I. 5.) The plaintiff's reply to defendant's counterclaims also includes a counterclaim which demands that, in the event the Court rules adversely to the plaintiff on the issue of priority, the Court nevertheless declared that the defendant is not entitled to a patent on the invention because of "[the defendant's] failure to comply with the conditions of patentability set forth in Chapters 10 and 11 of Title 35, United States Code." [5] (D.I. 29 at 3.)

[redacted] Defendant's motion to dismiss will be granted with leave given to the plaintiff to amend its counterclaim in the manner hereinafter indicated.

Rule 8(a), Fed.R.Civ.P., reads in pertinent part:

> A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain ... (2) a short and plain statement of the claim showing the pleader is entitled to relief ....

This means that the short and plain statement of the claim must give the opposing party *fair notice* of what the claim is and the grounds upon which it rests. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (emphasis supplied).

Plaintiff's counterclaim *in toto* reads:

> In the event that the Court enter judgment against Plaintiff on either Plain-

1. 35 U.S.C. § 146 provides, in part:

 Civil action in case of interference.

 Any party to an interference dissatisfied with the decision of the board of patent interferences on the question of priority, may have remedy by civil action, if commenced within such time after such decision, not less than sixty days, as the Commissioner appoints or as provided in section 141 of this title, unless he has appealed to the United States Court of Customs and Patent Appeals, and such appeal is pending or has been decided. In such suits the record in the Patent Office shall be admitted on motion of either party under the terms and conditions as to costs, expenses, and the further cross-examination of the witnesses as the court imposes, without prejudice to the right of the parties to take further testimony. The testimony and exhibits of the record in the Patent Office when admitted shall have the same effect as if originally taken and produced in the suit.

 Such suit may be instituted against the party in interest as shown by the records of the Patent Office at the time of the decision complained of, but any party in interest may become a party to the action.

2. The factual background of this case was recounted in a previously published opinion, 589 F.Supp. 527, 528–29 (1984), and need not be fully repeated here.

3. U.S. Patent No. 3,905,790. (D.I. 1, Ex. A.)

4. U.S. Patent Application Serial No. 649,955. (D.I. 1, Ex. B.)

5. The plaintiff's counterclaim also includes requests for judgment on the issue of priority and dismissal of defendant's counterclaims. (D.I. 23 at 3.) The former request is simply a restatement of plaintiff's original claim in its complaint and will not be ruled upon at this time; the latter request is apparently one for the Court to reverse its decision in *Nitto Boseki Co., Ltd. v. Owens-Corning Fiberglas Corp.*, 589 F.Supp. 527 (D.Del.1984), and the order entered in accordance therewith on June 20, 1984 (D.I. 22) in this case and, because no reason for doing so has been offered, that request will be denied.

tiff's complaint or any of Defendant's Counterclaims, Plaintiff states:

Claims 24, 25 and 35 of Defendant's Application Serial No. 649,955, which correspond to the Counts in Interference No. 100,382, are not patentable to Defendant for failure to comply with the conditions for patentability set forth in Chapters 10 and 11 of Title 35 United States Code.

(D.I. 29 at 3.)

■ While admittedly plaintiff's stated counterclaim is short, it is far too expansive to give the defendant or the Court a fair idea of the claims or the legal basis on which such claims are based. This rule is particularly applicable to § 146 review proceedings because the matters which may be raised and considered on review are limited.

■ The first such limitation is found in the well-settled doctrine that a civil action brought under 35 U.S.C. § 146 is essentially a proceeding to review the action of the Board in an interference proceeding denying priority of invention to a party dissatisfied with the Board's decision on priority. While in form a § 146 proceeding is a trial *de novo*, the review proceeding is ordinarily subject to the general rule of estoppel applicable to proceedings for review of administrative agency action. Thus, the consideration of issues ancillary to priority is limited to those issues which were raised before and decided by the Board in the interference proceedings. *See Standard Oil Co. v. Montedison*, 540 F.2d 611, 616 (3d Cir.1976), and cases cited at notes 7 and 8. While the Court is under the impression from the prior proceedings in this case that all the claims which were ancillary to priority and considered by the Board are already at issue in this case, nevertheless, there may be issues ancillary to priority which were considered by the Board and of which this Court is unaware. If there are any such issues or claims, they may be asserted in plaintiff's amended counterclaim but

they must be alleged with sufficient specificity to inform the defendant and this Court of the precise basis for such claims.

■ A second limitation exists with respect to pleading patentability of invention. If the Court determines that the defendant-applicant should be awarded priority of invention, then, under the doctrine of *Hill v. Wooster*, 132 U.S. 693, 10 S.Ct. 228, 33 L.Ed. 502 (1890), this Court must rule on the patentability of that invention before ordering the Commissioner of Patents to issue a patent to the defendant-applicant. As this Court understands *Hill v. Wooster, supra*, in order for it to determine the "patentability of the invention" it need only determine whether the invention is novel, useful and nonobvious. *Hill v. Wooster*, 132 U.S. at 700–701, 10 S.Ct. at 230–231. The Court is not required in a § 146 proceeding to determine on all possible grounds the "validity of the patent" which it orders to be issued. Of course, patentability and validity are two closely related subjects in the field of patent law. Patentability, however, refers to the invention in question while validity has reference to an issued patent. Naturally, a patent should not issue unless it covers a patentable invention, that is, it must be novel, useful and nonobvious, but the fact that a patent covers a patentable invention does not necessarily mean that the patent will be valid. An issued patent may be invalid for any number of technical reasons. Thus, the validity of an issued patent should ordinarily be determined in a direct patent infringement action or a declaratory judgment suit where the parties would be expected to "develop a full investigation of validity on all available grounds." *See Sanford v. Kepner*, 344 U.S. 13, 15, 73 S.Ct. 75, 76, 97 L.Ed. 12 (1952). On the other hand, this Court could make a determination of the patentability of an invention in favor of an applicant based upon the records generated in the PTO and before the Board.

This distinction between the patentability of an invention and the validity of a patent

has not always been recognized in § 146 cases. This Court, in its prior opinion in this matter, 589 F.Supp. at 532, may have contributed to this confusion by the use of the words "validity of the invention" when it meant "patentability of the invention." Thus, any amended counterclaim that may be filed by the plaintiff may only raise questions of novelty, usefulness and nonobviousness—i.e., patentability of defendant-applicant's invention.[6]

In allowing the plaintiff to file an amended counterclaim raising the patentability of the defendant-applicant's invention, however, the Court is not now ruling upon the appropriateness of such a counterclaim because, after all, a patent has already been issued to the plaintiff on claims which comprise the counts in interference. Whether the plaintiff in this proceeding may challenge the patentability (novelty, usefulness and nonobviousness) of defendant's similar invention appears questionable. *See Sanford v. Kepner*, 344 U.S. at 15–16, 73 S.Ct. at 76–77. In any event, this matter will be reserved for a later time if it becomes material.

An order will be entered in accordance with this Memorandum Opinion.

---

**6.** This issue would have to be determined by the Court whether or not raised in plaintiff's amended counterclaim under the holding of *Hill v. Wooster* if the Court decides to award priority to the defendant-applicant. For instance, suppose the Court awarded priority to the defendant-applicant and the plaintiff for one reason or another loses interest in the case and takes no further part in this litigation, the Court would still have to determine whether the defendant-applicant's invention was novel, useful and nonobvious and this decision could be made on the record before the Board and the PTO. On the other hand, if this Court were required to determine validity of the patent in order to order it to issue on all possible grounds without an adversary, it would be impossible for the Court to make such a determination any more than a Patent Examiner could.