**Joseph H. MacKAY, Jr., et al., Plaintiffs,**

v.

**Donald J. QUIGG, Defendant.**

**Civ. A. No. 86–0622.**

United States District Court, District of Columbia.

Aug. 7, 1986.

---

Thomas J. Lannon, Washington, D.C., for plaintiffs.

Joseph F. Nakamura, Sol., Office of the Sol., Fred E. McKelvey, Deputy Sol., John C. Martin, Assoc. Sol., Arlington, Va., for defendant.

## MEMORANDUM OPINION AND ORDER

THOMAS F. HOGAN, District Judge.

This patent case is before the Court on defendant's motion *in limine*, which seeks to limit the evidence to be introduced in this action to those issues that were raised before the Patent and Trademark Office. Specifically, the motion seeks exclusion of all evidence relating to "commercial success" and "copying" by others, because, defendants contend, plaintiffs failed to raise these issues before the relevant administrative tribunals. After considering the briefs submitted by the parties, the Court shall grant defendant's motion.

### FACTS

Plaintiffs have brought suit in this case under 35 U.S.C. § 145 to set aside an adverse decision of the Board of Patent Appeals and Interferences ("Board") of the Patent and Trademark Office ("PTO"). The facts which led to the Board's decision are undisputed.

On June 6, 1972, Patent No. 3,667,170, entitled "Finishing Article and Support Member Therefor," was granted to plaintiff Joseph MacKay. The patented article is a specialty abrasive finishing disk. It is currently assigned to plaintiff Standard Abrasives, Inc. This invention, though commercially successful, apparently experienced technical problems.

On June 24, 1980, plaintiffs filed an application for "reissue" of the patent; and on May 14, 1982, they filed a "continuation" of that application.[1] The application and continuation were based on a new design,

---

1. The application and continuation were filed as a result of a civil action brought in the United States District Court for the Central District of California, for infringement of the patent. That action has been stayed pending completion of the application process.

which allegedly solved the technical problems. Both the application for reissue and continuation were rejected by the PTO's Primary Examiner ("Examiner"). Plaintiffs appealed to the Board, which, on January 9, 1986, affirmed the Examiner's decision. The Board's rejection was based on a finding that plaintiffs' assertions in support of a reissue of the patent would have been "obvious to one of ordinary skill in the art to which the invention relates." 35 U.S.C. § 103. In the briefs submitted to the Board, plaintiffs failed to argue on, or present any evidence regarding, the issues of commercial success or copying in order to support their claim of "nonobviousness." Plaintiffs intend, however, to use such evidence in this civil suit, and defendant has moved to exclude it.

## DISCUSSION

### A. *Patentability*

In order for an invention to be "patentable," it must meet three statutory requirements. The invention must be "new" and "useful," *id.* §§ 101, 102, and it must be "nonobvious to one of ordinary skill in the art to which the invention relates." *Id.* § 103.

In order for an invention to be found nonobvious under Section 103, several basic factual inquiries must be pursued. *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966).

Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved.... *Such secondary considerations as commercial success,* long felt but unsolved needs, failure of others, *etc.* [*e.g. copying,*] might be utilized to give light to the circumstances.

*Id.* at 17, 86 S.Ct. at 694 (emphasis added). Secondary considerations are evidence to be considered en route to a determination of obviousness. "Indeed, evidence of secondary considerations may often be the most probative and cogent evidence in the record. It may often establish that an invention appearing to have been obvious in light of the prior art was not." *Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1538 (Fed.Cir.1983). *See Simmons Fastener Corp. v. Illinois Tool Works,* 739 F.2d 1573, 1575 (Fed.Cir.1984) (court referred to secondary consideration evidence that had been properly presented to the court, stating that "[o]nly after all evidence of nonobviousness has been considered can a conclusion on obviousness be reached").

### B. *Proceedings Under 35 U.S.C. §§ 141 and 145*

When an applicant for a patent is dissatisfied with a decision of the Board, two routes are available to him as recourse. Under § 141, the decision may be appealed to the United States Court of Appeals for the Federal Circuit. Alternatively, under § 145, as in this case, a civil action may be filed in the United States District Court for the District of Columbia against the Commissioner of Patents and Trademarks. "The board's decision is the jurisdictional base for the suit and the record before the office is the evidentiary nucleus. The proceeding, however, is not simply an appeal since the *parties are entitled to submit additional evidence.*" *Fregeau v. Mossinghoff,* 776 F.2d 1034, 1037–38 (Fed.Cir. 1985) (emphasis added) ("court reviews the facts found by the board under the clearly erroneous standard ... adapted, of course, to the aspect of a § 145 proceeding which allows introduction of additional evidence").

#### 1. *De Novo Review*

Actions under §§ 141 and 145 are "proceedings of a hybrid nature. They are sometimes denominated 'trials *de novo,*' but such use of this term is somewhat loose. Proceedings in [the district] [c]ourt in actions of these two types are *not true or genuine trials de novo.*" *Monsanto Company v. Kamp,* 269 F.Supp. 818, 822 (D.D.C.1967) (emphasis added). A district court may only evaluate "new" evidence if it supplements issues raised previously before the PTO. *Id.*

The policy of encouraging full disclosure to *administrative* tribunals is a compelling reason for Article III courts to fashion limitations on the admissibility of supplementary evidence in actions such as the case *sub judice.* *DeSeversky v. Brenner,* 424 F.2d 857, 858 (D.C.Cir.1970). For that reason, despite the "de novo" label accorded judicial review under § 145, courts have limited the admissibility of certain kinds of evidence. Therefore,

> In an action under 35 U.S.C. § 145, the plaintiff has a trial *de novo* and may introduce evidence not previously presented to the Patent Office. But he is *precluded from presenting new issues,* at least in the absence of some reason of justice put forward for failure to present the issue to the Patent Office.

*DeSeversky,* 424 F.2d at 858. This requirement promotes judicial economy, "since the application of Patent Office expertise in the first instance may either obviate the need for judicial consideration, or illuminate the issues and facilitate the court's disposition." *Id.* at 859.

Although "[a]dditional evidence is admissible in support of contentions advanced by the parties in the Patent Office, such evidence shall not be admissible in district court, if it was available to the parties, but was withheld from the Patent Office as a result of fraud, bad faith, or gross negligence...." *Monsanto,* 269 F.Supp. at 822. *See also Killian v. Watson,* 121 U.S.P.Q. (BNA) 507 (D.D.C.1958) (new evidence admissible that strengthens contentions already made and supported in PTO proceedings absent suppression, bad faith, or negligence); *DeSeversky,* 424 F.2d at 858 n. 5. While de novo factfinding becomes necessary when new evidence is presented to the district court regarding a question of fact that is already in dispute, *Fregeau,* 776 F.2d at 1038, "the plaintiff may not submit for the first time evidence which he was negligent in failing to submit to the Patent Office." *California Research Corp. v. Ladd,* 356 F.2d 813, 821 n. 18 (D.C.Cir. 1966).

2. *The Present Case: Evidence of "Commercial Success" and "Copying" by Others*

■ The Court rejects defendant's argument that commercial success and copying by others are issues "separate" from the question of obviousness. Factual findings regarding commercial success and copying by others are secondary considerations which are a necessary part of a finding of obviousness. *Stratoflex,* 713 F.2d at 1538. In short, they are sub-issues of obviousness. However, as discussed, *supra,* the need to promote full disclosure before administrative tribunals requires that even a sub-issue be fully explored by the PTO before allowing new evidence in support of the sub-issue to be admitted for the first time in district court. This is so, unless the proponents of the evidence show that they did not intentionally or negligently fail to submit the evidence at the administrative level. *Monsanto,* 269 F.Supp. at 822.

Plaintiffs assert baldly that they "did not intentionally nor [sic] negligently fail to submit ... evidence [of commercial success or copying] to the PTO." [Plaintiffs' Response at 6.] No reasons are set forth, however, to justify plaintiffs' omission. Plaintiffs fail, therefore, to meet their burden of showing why the "new" evidence should be admitted.

■ Plaintiffs offer an alternative argument that, in any event, the admission to the PTO of a declaration by Edward Vecchio, an expert in the abrasive-finishing industry, raised the issue of commercial success. After reviewing the declaration, the Court concludes that, although Vecchio mentions a related product, which was commercially unsuccessful, this fails to constitute positive evidence of the relevant product's commercial success, alleged to have resulted from an improved design. Nor does Vecchio's statement even remotely address other evidence plaintiff seeks to admit now: that the improved invention acted as a catalyst; that it was substituted for previous devices used in the industry; that it was copied by infringers; and that plain-

tiffs sold licenses for the new invention to others." Plaintiffs' Response at 5.

Therefore, because plaintiffs failed to present and support contentions of commercial success or copying during the PTO proceedings, and have not set forth any reasons for this omission, they are now precluded from presenting such evidence over defendant's objections to this Court. *See Monsanto*, 269 F.Supp. at 822.[2]

### 3. *Expert Witness on Prior Art*

While plaintiffs failed to present evidence of commercial success or copying, they did present evidence to the PTO, which described the "prior art" in the abrasive finishing industry, in order to support their assertion that their new design was nonobvious. In particular, the Vecchio declaration concludes that the new design was nonobvious, based on the fact that it solved serious problems that had previously existed in the industry.

 Plaintiffs now wish to introduce new expert witness testimony regarding nonobviousness of the claimed invention as compared to the prior art in the abrasive finishing industry. In light of the evidence already submitted in the PTO proceedings, this Court finds that there has been no negligence or suppression in this evidentiary area, so that plaintiffs may introduce additional evidence to strengthen its prior art argument.

### C. *Plaintiffs' Alternatives*

If plaintiffs so choose, they may reapply for a patent reissue, by filing another reissue application under 35 U.S.C. § 120. Otherwise, plaintiffs may proceed to trial without the evidence on commercial success and copying by others.

### *Conclusion*

In summary, the Court shall GRANT defendant's motion to limit the evidence to be introduced in this civil action, and ex-

clude all evidence relating to the issues of commercial success and copying by others.

Wherefore, it is this 7th day of August, 1986, hereby ORDERED that defendant's motion to limit the evidence be and hereby is GRANTED.

---

2. The Court need not answer the question of whether the evidence of commercial success and copying by others would be admissible had defendant failed to raise an objection.